## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                           No. 1:20-cr-01892-JCH

JOSE CONDE-NAVARRO,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Jose Conde-Navarro's Motion to Suppress Tangible Evidence and Statements (Mot., ECF No. 18). The Government responded in opposition (Am. Resp., ECF No. 30), to which Defendant filed a reply (Reply, ECF No. 24). The Court held a hearing on the motion on March 11, 2021. The Court, after carefully considering the motion, briefs, evidence, and being fully advised of the premises, concludes that the motion will be denied.

## I.    FACTUAL FINDINGS

In making its factual findings, the Court heard the testimony of Erick Castaneda, a task force officer with the Drug Enforcement Administration (DEA), whom the Court finds credible. On September 21, 2020, law enforcement officers arranged for a source of information (SOI) to purchase methamphetamine (meth) from Defendant at a Ramada Inn on Yale Boulevard in Albuquerque as part of a controlled buy. Testimony of Erick Castaneda, 8:3-6, 11:4-8 (Castaneda Test.); Govt.'s Ex. 4. The SOI told officers that Defendant was a

"source of supply" of meth. *Id*. 9:1-2. The SOI gave officers Defendant's phone number, identified his Facebook account, and reported that Defendant drove a silver Dodge Magnum, resided at the Ramada Inn, and claimed that Defendant was in possession of and could sell the SOI about three pounds of meth. *Id*. 9:1-19. This was the first time that officers had worked with the SOI, who was cooperating with officers in consideration for his/her own criminal activities. *Id*. 41:18-25 – 42:1-8.

Based on some of the SOI's information about Defendant, officers checked law enforcement records which showed that Defendant had a criminal history for offenses such as aggravated fleeing from a law enforcement officer, aggravated battery on a peace officer, prior meth trafficking, and criminal damage to property. *Id*. 9:23-25 – 10:1-3, 10:18-25 – 11:1-3.

 While in the presence of law enforcement agents, the SOI telephoned Defendant at 7:52 p.m. Govt.'s Ex. 4 at 2. The SOI told Defendant that he/she was "ready to meet with [Defendant] again." *Id.* at 2. They agreed to meet at the "same spot," meaning the Ramada Inn, and the SOI ended the telephone call by saying he/she would arrive in 15 to 20 minutes. *Id*. at 3; Castaneda Test. 11:19-24, 14:1-7. After this phone call, officers established surveillance at the Ramada Inn in anticipation of the undercover buy. *Id.* 14:11-16. Several minutes later, officers observed a silver Dodge Magnum pull into the Ramada Inn parking lot and park directly in front of Room 125. *Id*. 14:18-21. Officers saw a man, whom they believed was Defendant, exit the car's driver's side and enter Room 125. *Id*. 14:22-25 – 15:1-2.

Still in officers' presence, the SOI placed a second call to Defendant asking him to meet at a laundromat instead. Govt.'s Ex. 14, 2. Defendant responded that he was eating, but

agreed to meet at the laundromat. *Id.*  The SOI also texted Defendant in front of officers at

8:41 p.m., saying that the SOI was putting clothes in the dryer and asked Defendant "[a]bout

how long?" Govt.'s Ex. 7. Defendant responded six-minutes later in a text that Agent

Castaneda interpreted to mean that Defendant was preparing to depart his Ramada Inn room

and to meet the SOI. *Id.* Castaneda Test. 20:8-17. The SOI's last text message to Defendant

was at 9:33 p.m. Govt.'s Ex. 7.

A few minutes later, at 9:35 p.m., officers at the Ramada Inn observed Defendant and

another individual exit Room 125. Castaneda Test. 20:21-23. Defendant carried a black

backpack. *Id*. 20:24. As Defendant walked towards the silver Dodge, officers approached

Defendant and warrantlessly placed him in handcuffs. *Id*. 21:2-9. During a search of his

person, Agent Hella removed a key as well as small amounts of meth and heroin from

Defendant's pocket. *Id*. 21:13-17.

Agent Fritz opened and searched the backpack and found a safe inside. *Id*. 21:24-25 –

22:1-5. Using the key that Agent Hella found in Defendant's pocket, Fritz unlocked the safe,

revealing several individually wrapped bundles which later tested positive for meth. *Id*. 22:5-

10. Officers *Mirandized*[1] Defendant at this point. *Id*. 22:11-13; Govt.'s Ex. 8, 00:50-1:33. As

he sat in the patrol car, Defendant voluntarily signed a consent-to-search form for Room 125.

Castaneda Test. 52:23-25 – 53:1; Govt.'s Ex. 10. A search of the room revealed three

unloaded gun magazines and a small amount of loose meth. Castaneda Test. 29:2-4.

Agent Castaneda testified that the items found in Defendant's room and on his person

were inventoried at the DEA station pursuant to the DEA's written inventory policy, which

---

[1]      *Miranda v. Arizona*, 384 U.S. 436 (1966).

mandates an inventory "of all property that is taken into custody by DEA for safekeeping, regardless of whether probable cause exists to search the property." Govt.'s Ex. 3; Castaneda Test. 29:5-9. Inventory searches are not required to be made contemporaneous to a suspect's arrest but the search "must be made as soon as practical after the property to be searched has been transported to a DEA or other law enforcement facility." Govt.'s Ex. 3. The policy further mandates a search of "all containers, whether locked or unlocked," and requires agents to inventory the items on DEA Form 12 and describe the details of the inventory on DEA Form 6. Govt.'s Ex. 3. Under "Custody of Evidence," in DEA Form 6, agents carefully and particularly described the evidence seized, the factual circumstances underlying the seizures, and Agent Castaneda testified that DEA Form 6 was created pursuant to the DEA's inventory policy. Govt.'s Ex.11, 4-9; Castaneda Test. 34:8-11.

Defendant was later transported to the DEA station. *Id.* 36:10-13. Officers again *Mirandized* Defendant before beginning to question him at 12:37 a.m. on September 22, 2020. Govt.'s Ex. 12, 00:00-00:08, 1:15-1:40. Defendant answered agents' questions posed to him and voluntarily signed a consent-to-search form for his cell phone. Castaneda Test. 36:18-21; Govt.'s Ex. 13. When agents searched the phone, they found and photographed the recovered the text message conversation made between Defendant and the SOI. Castaneda Test. 18:24-25 – 19:1-2. At 3:10 a.m., Defendant was eventually transferred to Cibola County Correctional Center. Govt.'s Ex. 11, 4. The meth discovered in Defendant's possession was found to weigh about 1,200 grams. *Id*. at 1.

## II.    PROCEDURAL BACKGROUND

On September 22, 2020, Defendant was charged by criminal complaint and later indicted for a single count of possession with intent to distribute 500 grams and more of a

mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On November 10, 2020, Defendant filed a motion to suppress, arguing that: (1) officers lacked reasonable suspicion and probable cause to seize him and (2) his statements and the drug evidence were the products of an unlawful search and seizure under the Fourth Amendment.

## III.   FOURTH AMENDMENT STANDARD

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. In general, law enforcement officers must obtain a warrant supported by probable cause before conducting a search or seizure. *Kentucky v. King*, 563 U.S. 452, 459 (2011). "Although 'the defendant bears the burden of proving whether and when the Fourth Amendment was implicated,' … '[t]he government then bears the burden of proving that its warrantless actions were justified [by an exception],'" *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020) (quoting *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017)); *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021) ("[I]f the search or seizure was pursuant to a warrant, the defendant has the burden of proof; but if the police acted without a warrant the burden of proof is on the prosecution.") (citation omitted). "If the government establishes that an exception to the warrant requirement applies, the search is constitutional." *Neugin*, 958 F.3d at 930 (citing *United States v. Maestas*, 2 F.3d 1485, 1491-92 (10th Cir. 1993)).

If a search is found to violate Fourth Amendment, "the exclusionary rule normally dictates that evidence obtained as a result of that search be suppressed." *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005). To succeed in suppressing evidence discovered because of an illegal search, a defendant "must show the discovery would not

have come to light *but for* the government's unconstitutional conduct." *United States v. Sanchez*, 608 F.3d 685, 691 (10th Cir. 2010) (citation and quotation marks omitted) (emphasis in original). If a defendant establishes "but for" causation, "the government must then prove the evidence sought to be suppressed is not fruit of the poisonous tree either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." *Id*. (quotation marks omitted).

## IV.   DISCUSSION

### a. Defendant's arrest and subsequent search of his person

The Fourth Amendment's warrant requirement is subject to several exceptions. The Government argues that two such exceptions are relevant here. First, "'[l]aw enforcement personnel may arrest a person without a warrant if there is probable cause to believe that person committed a crime.'" *United States v. Romero*, 935 F.3d 1124, 1128 (10th Cir. 2019) (quoting *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999)). In addition, police may search a person that has been legally arrested because the probable cause to support the arrest supports the search incident to the arrest. *Id.* (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973)). "However, because the fact of the lawful arrest ... establishes the authority to search, where probable cause for the arrest is lacking, the subsequent search is unconstitutional unless supported on other grounds." *Id*.

"An officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *United States v. Muñoz–Nava,* 524 F.3d 1137, 1144 (10th Cir. 2008)

(citation and quotation omitted). "Probable cause doesn't require proof that something is more likely true than false. It requires only a 'fair probability,' a standard understood to mean something more than a 'bare suspicion' but less than a preponderance of the evidence at hand." *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014) (citation omitted). In making the probable cause determination, the court evaluates the facts and circumstances "as they would have appeared to a prudent, cautious, trained police officer." *United States v. Snow*, 82 F.3d 935, 942 (10th Cir. 1996). Where probable cause exists, a warrantless arrest made outside of the defendant's home does not violate the Fourth Amendment. *United States v. Watson,* 423 U.S. 411, 417 (1976).

"Moreover, where, as here, probable cause is based on information received from a confidential informant … the court makes a probable cause determination based on the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge." *United States v. Cruz*, 977 F.3d 998, 1004–05 (10th Cir. 2020) (quoting *United States v. Hendrix*, 664 F.3d 1334, 1338 (10th Cir. 2011) (quotation marks omitted)). "An informant's tip which provides 'highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity' is more likely to be found sufficient to support probable cause." *Hendrix*, 664 F.3d at 1338 (quoting *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009)). "Further, information from any source (whether a mere tipster, a confidential source, or a confidential informant) is more reliable if it is confirmed, and thereby corroborated, by officers' independent observations." *Cruz*, 977 F.3d at 1005. *See, e.g., United States v. Artez,* 389 F.3d 1106, 1111 (10th Cir. 2004) (informant's tip that narcotics are being distributed at a particular location can be corroborated through "controlled buy" at that location).

The Government contends that in *Cruz*, the Tenth Circuit upheld a warrantless arrest in a "nearly … precise scenario" as to the one here. Am. Resp. at 7. In *Cruz*, officers warrantlessly arrested the defendant, a probationer, for drug trafficking during a controlled buy. Before the buy was arranged, two informants provided an officer information about the defendant and identified him in a photograph. 977 F.3d at 1002, 1005. The second informant also showed the officer text messages between him and the defendant discussing drug orders. *Id.* at 1002. At the officer's request, the second informant set up a drug buy with the defendant while the officer listened. *Id.* When the defendant appeared at the arranged time, an officer approached and later arrested him. *Id*. at 1003.

On appeal, the defendant argued that probable cause was lacking "unless and until a controlled buy was completed." *Id*. at 1005. The Tenth Circuit rejected this argument and identified the following facts that gave rise to probable cause: officers knew the defendant trafficked drugs despite being on probation; the two informants provided "detailed, corroborated information," including the defendant's address and phone number, and they identified him in photographs; text messages showed one informant and the defendant discussing drug deals; and the officers' independent confirmations made by asking the informant to set up a drug buy while an officer listened and the defendant's presence at the agreed-upon time and place to meet. *Id*. at 1005-06.

The Court agrees that *Cruz* is dispositive and that the SOI's veracity, reliability and basis of knowledge helped established probable cause. Veracity refers to "whether there is reason to believe that the informant is telling the truth, including whether he faces criminal charges or whether his statement is against his own penal interest." *Quezada-Enriquez,* 567 F.3d at 1233. Here, this is not a case involving an anonymous tipster. Officers knew the

8

SOI's identity, which "is one indicator of veracity of and reliability." *United States v. Pulliam,* 748 F.3d 967, 971, n. 2 (10th Cir. 2014). Moreover, the SOI's admission that he/she had previously bought drugs from Defendant bolstered his/her credibility since an informant's statement against its own interest establishes credibility. *See United States v. Le*, 173 F.3d 1258, 1266 (10th Cir. 1999) (confidential informants' admissions to police that they purchased drugs from defendant considered indicative of reliability because it was against their penal interest).

The SOI's information was reliable. "Reliability determinations entail inquiry into whether the informant has provided accurate information in the past." *Quezada-Enriquez*, 567 F.3d at 1233. Similar to the informants in *Cruz*, the SOI gave officers firsthand knowledge about the location of Defendant's residence and phone number, identified his Facebook account, and reported that Defendant drove a Dodge Magnum. The SOI also stated that Defendant could sell the SOI about three pounds of meth. Even though the SOI did not have any history of cooperating with law enforcement, the salient details of SOI's story – that Defendant resided at the Ramada Inn, drove a Dodge Magnum, and could sell about three pounds of meth – proved to be accurate and reliable. *See United States v. Cherry*, 920 F.3d 1126, 1134 (7th Cir. 2019) ("When a suspect engages in the behaviors and actions that an informant has predicted, [t]hat is exactly the type of corroboration that counts," even though the informant may not have "a long (or any) history of cooperating with law enforcement.") (alteration in original) (citation and quotation marks omitted).

The SOI's basis of knowledge was established. Regarding an informant's basis of knowledge "a firsthand observation is entitled to greater weight than secondhand information." *Quezada–Enriquez,* 567 F.3d at 1233. The SOI's two telephone calls and

several text messages to Defendant involved firsthand observations that were in turn observed by the agents. This indicates that the SOI truly had firsthand knowledge about Defendant's drug dealing activities.

Finally, like the law enforcement officers in *Cruz*, the officers independently verified the SOI's information, thereby making his/her information more credible. Officers' record check confirmed that Defendant indeed had a criminal history for various offenses, including narcotics trafficking. As in *Cruz*, the agents asked the SOI to set up a drug transaction in officers' presence and while officers listened. Shortly after the telephone conversation, Defendant arrived at the Ramada Inn in a Dodge Magnum. The Defendant was later apprehended with about two and one-half pounds of meth, which corroborated the SOI's earlier statement that Defendant could sell the SOI about three pounds of the drug.

In summary, officers had probable cause to arrest Defendant when they approached him based on the SOI's reliable information and officers' independent investigation and observations.

To justify the warrantless search of Defendant's person, the Government relies on the search incident to the arrest exception to the Fourth Amendment's warrant requirement. That exception permits officers to warrantlessly "search the person of the accused when legally arrested." *United States v. Knapp*, 917 F.3d 1161, 1165 (10th Cir. 2019) (quoting *Weeks v. United States*, 232 U.S. 383, 392 (1914)). A police officer who makes a lawful custodial arrest may search both the arrestee's person and the area within the arrestee's "immediate control." *Id*. (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). "This authority is justified by the need to disarm the suspect and preserve evidence." *Id*. (citing *United States v. Robinson*, 414 U.S. 218, 234 (1973)). The right to search an arrestee incident to a lawful

arrest includes the right to search the pockets of the arrestee's clothing. *Robinson*, 414 U.S. at 234.

Agent Hella had the right to search Defendant's person and pockets as a search incident to arrest. The discovery of a key and small amounts of suspected heroin and meth found in Defendant's pocket's gave agents probable cause to believe that these items were contraband. The search of Defendant's person was a lawful search incident to arrest and did not violate the Fourth Amendment.

### b. The search of the backpack

The Government concedes that, in light of the Tenth Circuit's 2019 decision in *United States v. Knapp*, "the search of the backpack could not have been considered a search of Defendant's person." Am. Resp. at 12. *See Knapp*, 917 F.3d at 1169 (holding that a warrantless search of an arrestee's purse was not a search incident to arrest because the purse was closed and located three to four feet away and the arrestee was handcuffed with one officer next to her and two others nearby). The Government makes no attempt to justify the backpack search under another exception to the warrant requirement. Instead, the Government proceeds directly to two exceptions to the exclusionary rule: the inevitable discovery and good-faith doctrines. Because the inevitable discovery doctrine applies, the Court does not address or decide the Government's good-faith argument.

"The inevitable discovery doctrine provides an exception to the exclusionary rule, and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *Cunningham*, 413 F.3d at 1203. "Those lawful means include an inventory search." *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003). Inventory searches are "a well-defined exception to the warrant requirement of the Fourth

Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). The purposes of an inventory search are to protect the defendant's property while in police custody, to shield the police from claims of lost or stolen property, and to protect the police from potential dangers. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

The Tenth Circuit has identified two criteria for inventory searches to be reasonable under the Fourth Amendment. *See Tueller*, 349 F.3d at 1243. First, such searches "are reasonable only if conducted according to standardized procedures." *Id*. Second "[t]he policy or practice governing inventory searches should be designed to produce an inventory, [] in other words, an inventory search must be justified by the administrative purposes of such searches." *Id*. (citations and quotation marks omitted). "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Id*. (quoting *Florida v. Wells,* 495 U.S. 1, 4 (1990)).

The first component – whether agents acted according to standardized criteria – is met. The DEA's written, standardized inventory policy mandates an inventory search "of all property that is taken into custody by DEA for safekeeping, regardless of whether probable cause exists to search the property," and requires a search of "all containers, whether locked or unlocked, that are lawfully seized for safekeeping." Govt.'s Ex. 3. As explained earlier, Defendant was properly arrested on probable cause that he was engaging in drug crimes. Because he was arrested, his backpack and other items in his possession at the time of his arrest were necessarily going to be searched and inventoried pursuant to the DEA's written policy. It was therefore inevitable that the unlawful drugs found within the safe inside the backpack were going to be discovered during a routine inventory search, independent of Agent Fritz's alleged unlawful search, and that Defendant was going to be charged with their

possession. *See United States v. Babilonia*, 854 F.3d 163, 178–79 (2d Cir. 2017) ("where a search incident to arrest is not justified, evidence recovered from an immediately ensuing search may be admissible nevertheless if the contents would inevitably have been discovered in a permissible inventory search.")

The second reasonableness component – whether the search resulted in an inventory list – is also met. On DEA Form 6, prepared two days after Defendant's arrest and the search of the backpack, agents listed and described the evidence seized from Defendant. Therefore, the inventory search was reasonable because the agents acted according to the DEA's standardized inventory policy which was "designed to" – and in fact did – "produce an inventory." *Tueller*, 349 F.3d at 1243.

In summary, the Government has shown by a preponderance of the evidence that Defendant's backpack was going to be searched and that the incriminating evidence was inevitably going to be discovered. In light of this ruling, the Court does not reach the Government's alternative argument that agents' search of the backpack was done in good-faith.

### c. Attenuation

"In considering whether evidence seized is so attenuated from the illegality as to dissipate any taint, [the court] balance[s] the [1] temporal proximity of the Fourth Amendment violation, [2] any intervening circumstances, and [3] the purpose and flagrancy of the official misconduct." *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006) (citation and quotation marks omitted).

Defendant appears to mainly base his attenuation argument on the alleged invalid arrest. *See, e.g.*, Mot. at 9 ("Mr. Conde-Navarro's statements to law enforcement were also a

derivative result of his unlawful arrest."); Reply at 7 ("The Miranda warning given to [Defendant] after his arrest did not attenuate the taint of his unconstitutional arrest."). However, the Court has already ruled that probable cause supported Defendant's arrest and therefore his attenuation arguments necessarily fail. To the extent that Defendant bases his attenuation arguments on the alleged unlawful backpack search, the Court will, for the sake of completeness, analyze whether the backpack search tainted Defendant's post-arrest statements and consent to search his cellphone and motel room.

The first attenuation factor examines the "temporal proximity between the illegal seizure and discovery of the incriminating evidence." *United States v. Shrum*, 908 F.3d 1219, 1235 (10th Cir. 2018). "The longer the time lapse between the initial illegality and the acquisition of the challenged evidence, especially where the evidence is verbal, the more likely such evidence has been purged of the illegality's primary taint, *i.e.*, has become attenuated." *Id*. at 1236. Defendant's post-arrest statements made at the DEA station and his consent to search his cellphone were made hours after the alleged illegal search, which is enough time to purge any purported taint. *See Torres-Castro*, 470 F.3d at 1001 (noting that five to ten minutes was sufficient to purge taint between post-arrest statements and unlawful protective sweep). However, Defendant's consent to search his motel room was obtained sometimes shortly after the backpack search and therefore Defendant's consent to search his motel room was possibly tainted. Thus, the first factor favors the Government with respect to the statements at the DEA station and the cellphone consent-to-search form, but favors Defendant with respect to the motel room search.

The second factor – the presence of intervening circumstances – plainly supports the Government. As explained earlier, Defendant was already legitimately arrested for drug

14

possession. Officers then found meth and heroin in his pockets as a valid search incident to arrest. Officers could have further detained and questioned Defendant based on this incriminating evidence alone. Defendant's post-arrest statements and consent to search are therefore not directly connected to the purported unconstitutional backpack seizure. *Cf. United States v. Gaines*, 918 F.3d 793, 801–02 (10th Cir. 2019) (holding that later-developed probable cause to search defendant's car was immaterial because "the discovery of evidence [in the car] would still be traced directly to" the initial alleged illegal seizure). Moreover, *Miranda* warnings were provided to Defendant before his discussions with agents which is significant because "[a] *Miranda* warning itself may be a significant intervening circumstance that can break any factual nexus between an illegal search and subsequent incriminating statement." *Torres-Castro*, 470 F.3d at 1001.

The third and "particularly significant," attenuation factor – the purpose and flagrancy of the alleged misconduct – weighs heavily in the Government's favor. *Shrum*, 908 F.3d at 1236 (quotation marks omitted). "[P]urposeful and flagrant misconduct is generally found where: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed in the hope that something might turn up." *United States v. Fox*, 600 F.3d 1253, 1261 (10th Cir. 2010) (citation and quotation marks omitted). Far from showing that agents acted flagrantly, the record instead shows that they reasonably believed that Defendant was engaged in criminal activity based on credible information from a known informant and officers' independent verifications. *See Utah v. Strieff*, 136 S. Ct. 2056, 2063 (2016) (despite unconstitutional investigatory stop of defendant, no suggestion of flagrant police conduct where "all the

evidence suggest[ed] that the stop … occurred in connection with a bona fide investigation of a suspected drug house. Officer Fackrell saw Strieff leave a suspected drug house. And his suspicion about the house was based on an anonymous tip and his personal observations.") The third attenuation strongly weighs in the Government's favor.

Weighing the attenuation factors, Defendant's post-arrest statements and evidence found from his motel room and cellphone are admissible because that evidence was not directly connected to the alleged unconstitutional seizure of evidence in the backpack.

## V.    CONCLUSION

For the reasons explained herein, it is therefore **ORDERED** that Defendant Jose Conde-Navarro's Motion to Suppress Tangible Evidence and Statements **(ECF No. 18)** is **DENIED**.

**IT IS SO ORDERED**.

HONORABLE JUDITH C. HERRERA
Senior United States District Judge